PONTIAC. The (McGINNIS v.). See Case No 8,801.

POOKE (HUNT v.). See Cases Nos. 6,895 and 6,896.

POOL (FLEEGER v.). See Case No. 4,860.

## Case No. 11,268.

### POOL v. McDONALD et al.

[15 N. B. R. 560; 9 Chi. Leg. News, 322; 4 Law & Eq. Rep. 27; 2 Cin. Law Bul. 151.] [1]

Circuit Court, N. D. Ohio. May 31, 1877.

BANKRUPTCY—PARTNERSHIP—COMPROMISE PROPOSITION SUBMITTED BY PARTNER—JURISDICTION—PRIOR ASSIGNMENT UNDER STATE LAW.

1. One member of a firm which has been adjudicated bankrupt may submit a proposition of composition to the creditors of the firm and his individual creditors.

2. The jurisdiction of the bankrupt court is not affected by the fact that an assignment for the benefit of creditors under the state law had been made prior to the adjudication.

[Cited in Re Waitzfelder, Case No. 17,048.]

[In review of the action of the district court of the United States for the Northern district of Ohio.]

This cause came on to be heard upon the exceptions of Hiram Pool, a creditor of McDonald & Co., and J. A. Saxton, to the ruling and judgment of the district court, in its affirmance of the proposition of composition made by J. A. Saxton and accepted by the requisite number and amount in value of the creditors of said bankrupt. It appears in evidence that the firm of McDonald & Co. was composed of J. A. Saxton, A. McDonald, and A. Laughlin; that the style of the firm was McDonald & Co.; that some of the creditors of said firm hold, as evidences of their claims, the paper of the firm, signed by the name of McDonald & Co.; that others hold paper signed McDonald & Co., indorsed by J. A. Saxton; that said firm, and Saxton in his individual capacity, made an assignment for the equal benefit of all their creditors on or about the 15th day of October, 1875, under the state law; that on the 15th day of February, 1876, the creditors of McDonald & Co. instituted proceedings in bankruptcy against the firm and its individual members, upon which said firm and its members were adjudicated bankrupts; that afterwards, in the month of November, 1876, the said Saxton, at the urgent solicitation of his creditors, submitted to the creditors of the firm and his individual creditors a proposition of composition, as provided for in the composition section of the bankrupt act [of 1867 (14 Stat. 517)]. That said proposition was accepted and confirmed by the requisite number and amount, as required by said statute. The district court afterward, upon hearing—exceptions having been filed to the register's report—approved the report of said composition, and ordered the same to be recorded. [Case unreported.]

SWAYNE, Circuit Justice. Hiram Pool comes into this court asking a review and reversal of the proceedings and judgment of

[1] [Reprinted from 15 N. B. R. 560, by permission. 4 Law & Eq. Rep. 27, contains only a partial report.]

the district court approving of the composition made by J. A. Saxton and his creditors. He therefore invokes and thereby submits himself to the jurisdiction of the court. By his counsel he objects to the proceedings below, and amongst other things says that the proceedings were illegal, because the creditors holding the paper signed by McDonald & Co. were permitted to vote on the proposition submitted by said Saxton. On a full review of all the authorities cited and reasons urged, I find nothing in the manner of the vote, or the qualification of the voters, that is liable to the slightest criticism on the questions of law or matters of fact. I find that, out of a total of two hundred and eighty-seven firm creditors, two hundred and seventy-nine voted for and afterwards signed the resolution accepting the composition; that out of a total of fifty-six creditors having the indorsement of J. A. Saxton, as aforesaid, fifty-one signed a resolution accepting the composition, one creditor voting in the negative, and the other four not voting. The proceeding below is further objected to and claimed to be fatally defective for the reason that under section —— of the bankrupt act the proposition could not be made by J. A. S., but could only be made by the firm. This is purely a statutory question; the word "debtor" therein cannot be held to be merely applicable to the firm, but, in the liberal construction which should be given to it, should be interpreted to mean any one or more of the debtors; all the analogies of the law are against any such narrow interpretation. If judgment is rendered against numerous parties, there is no difficulty in one or more of them proceeding in error to review the same—the case at bar is much stronger in favor of the right of each debtor for himself to submit a proposition of composition. It is difficult to see how any creditor could be injured thereby. They have still all their rights of accepting or rejecting the proposition, and they are the sole and proper judges as to what is to their best interests.

The other debtors are not here objecting; then can Hiram Pool vicariously make this objection for the other debtors? Clearly, he could not. He has no locus standi in this court for any such purpose. Another fact has not escaped me in looking over the files in the case; that Mr. Pool did not attend the composition meeting, and did not appear in the proceedings in the district court where others made objection, and who have, since the decision below, retired from the contest. It is very doubtful whether this present contestant could stand by and look over the battle-field and witness the contest carried on by others, taking no part therein, and thereafter make himself a party to the proceedings, so as to entitle him to be heard in his objections; but, waiving that, I find and hold that the proceedings were in every respect, from their inception to their close,

strictly and technically correct, and above and beyond the most captious criticism.

Another objection to the order of the court below is that there was an insurmountable barrier to the confirmation of the proposition on account of the state assignment and vested rights of the creditors thereunder. It would be a curious limitation of our power as a bankrupt court, if we should be compelled to abdicate our authority on the fact being brought to our knowledge that the bankrupts, or either of them, had, previous to adjudication in this court, made assignments of their property, under the state law. Such a fact would have no more control or effect upon our jurisdiction than any other act or transaction of the bankrupts with their property. There is no magic in the mere name of state assignment. It cannot annul the bankrupt act, nor interfere with our jurisdiction and power under it, and we dispose of the question before us as if no such assignment had ever been made.

We make no order in reference to the property in assignment, though it is evident that certain results do inevitably follow as the consequences of approving this composition. By its approval and confirmation McDonald & Co. and James A. Saxton are discharged and fully released from all their indebtedness as fully and completely as though they had received a certificate of discharge in bankruptcy. The state assignment, it has been said, has conveyed certain rights in property to the assignees, but the assignees could only hold and take such property in trust for the creditors, and on well-recognized elementary principles controlling trusts, when the reason for the trust has ceased, the property is relegated to the original assignor. So that, in this case, it follows, as a legal and logical sequence that, the creditors of Saxton and McDonald & Co. having been satisfied by this composition, there is nothing, so far as their debts are concerned, for either trustee or cestui que trust to hold or control any property assigned for the benefit of creditors who no longer sustain any such relation to the assignors. This composition annuls the debt or claim of the said Pool and others whose names appear upon the statements of creditors furnished by the debtors. We discharge the bankrupts from their liabilities. We have done what is clearly within the scope of our authority, and there can be no doubt in any legal mind of the effect and consequences that follow in the wake of our decision. If any creditors had received or obtained any money or dividend out of the assigned property before the acceptance and approval of the composition, we would have had no power or disposition to disturb them in that possession, but as the bankrupts are now discharged and the claims against them satisfied, by virtue of this composition, the creditors have no right or claim to any of the property remaining undisposed of or

money or assets now in the hands of the state assignees.

We have looked carefully through the testimony and find an almost unanimous vote of all classes of creditors in favor of the composition. We would readily conclude that this array of creditors judged rightly as to their best interests in casting their votes, and it would require a very strong showing to induce us to reverse the judgment of men who act deliberately and with a better knowledge of the circumstances than strangers to the transaction could have, but we find, in looking into the facts, that the composition was one most eminently fit and proper to be accepted by the creditors, and have no hesitation in pronouncing it for the best interests of all concerned. The judgment of the district court is affirmed.